

1  Michael K. Friedland (SBN 157,217)
   mfriedland@kmob.com
2  Paul N. Conover (SBN 192,358)
   pconover@kmob.com
3  Ali S. Razai (SBN 246,922)
   ali.razai@kmob.com
4  KNOBBE, MARTENS, OLSON & BEAR, LLP
   2040 Main Street, Fourteenth Floor
5  Irvine, CA  92614
   Telephone: (949) 760-0404
6  Facsimile:  (949) 760-9502

7  Attorneys for Plaintiffs Oakley, Inc. and Eye Safety Systems, Inc.

8

9

10             IN THE UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                    SOUTHERN DIVISION

13

| | |
|---|---|
| OAKLEY, INC., a Washington corporation; Eye Safety Systems, Inc., a Delaware corporation | **SACV10-01978 CJC (PLAx)** Civil Action No. |
| Plaintiffs, | **COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT** |
| v. | **DEMAND FOR JURY TRIAL** |
| KH Mountain, a Hong Kong company, | |
| Defendant. | |

21

22

23

24

25

26

27

28

Plaintiffs Oakley, Inc. ("Oakley") and Eye Safety Systems, Inc. ("ESS") (collectively "Plaintiffs") hereby complain of Defendant KH Mountain ("KHM") and allege as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action that relate to patent infringement, trademark counterfeiting, trademark infringement, trademark dilution, false designation of origin, and false description pursuant to sections 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) and 1121(a), and 28 U.S.C. §§ 1331 and 1338, as these claims arises under the laws of the United States.

2. This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within this judicial district including by selling and offering for sale infringing products for sale in this judicial district, and by committing acts of patent infringement, trademark counterfeiting, trademark infringement, trademark dilution, false designation of origin, and false description in this judicial district, including but not limited to selling infringing eyewear directly to consumers in this district and selling into the stream of commerce knowing such products would be sold in this state and this district, which acts form a substantial part of the events or omissions giving rise to Plaintiff's claim.

3. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 (b), (c) and (d), and 28 U.S.C. § 1400(b).

## II. THE PARTIES

4. Plaintiff Oakley is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610.

5. Plaintiff ESS is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 160-7th Street

West, Cimarron Building, Ketchum, ID 83340.

6.    Plaintiffs are informed and believe, and thereon allege, that Defendant KHM is a Hong Kong company having an office and a place of business at Unit N, 1/F, Wai Cheung Ind. Centre, No. 5 Shek Pai Tau Road, Tuen Mun, N.T., Hong Kong.

7.    Plaintiffs are informed and believe, and thereon allege, that Defendant has committed the acts alleged herein within this judicial district.

### III. GENERAL ALLEGATIONS

8.    Oakley has been actively engaged in the manufacture and sale of high quality eyewear since at least 1985.  Oakley is the manufacturer and retailer of several lines of eyewear that have enjoyed substantial success and are protected by various intellectual property rights owned by Oakley.

9.    ESS is a wholly-owned subsidiary of Oakley and is engaged in the manufacture and sale of protective eyewear.  ESS is the manufacturer and retailer of several lines of eyewear that have enjoyed substantial success and are protected by various intellectual property rights owned by ESS.

10.    On April 11, 2000, the United States Patent and Trademark Office ("U.S. PTO") duly and lawfully issued United States Patent No. 6,047,410 ("the '410 patent"), entitled "GOGGLE FRAME AND ATTACHMENT SYSTEM." ESS is the owner by assignment of all right, title, and interest in the '410 patent. A true and correct copy of the '410 patent is attached hereto as Exhibit 1.

11.    On October 4, 2005, the U.S. PTO duly and lawfully issued United States Design Patent No. D510,378 ("the D378 patent"), entitled "GOGGLES," describing and claiming the design and ornamentation disclosed therein.  ESS is the owner by assignment of all right, title, and interest in the D378 patent.  A true and correct copy of the D378 patent is attached hereto as Exhibit 2.

12.    Oakley is the owner of several trademarks, including Trademark Registration Nos. 1,521,599 and 1,356,297. ("Oakley Marks").    Trademark

Registration No. 1,521,599 was registered with the U.S. PTO on January 24, 1989, on the Principal Register. Trademark Registration No. 1,521,599 is associated with the following goods: sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces. A true and correct copy of the certificate of registration of Trademark Registration No. 1,521,599 is attached hereto as Exhibit 3.

13. Trademark Registration No. 1,356,297 was registered with the U.S. PTO on August 27, 1985, on the Principal Register. Trademark Registration No. 1,356,297 is associated with the following goods: goggles, sunglasses and protective pads for elbows, feet and knees. A true and correct copy of the certificate of registration of Trademark Registration No. 1,356,297 is attached hereto as Exhibit 4.

14. The Oakley Marks have not been abandoned, canceled or revoked.

15. Each of the Oakley Marks constitute an enforceable trademark that uniquely identifies, *inter alia*, sunglasses as emanating from, sponsored by, and/or authorized by Oakley.

16. As a result of the widespread use and display of each of the Oakley Marks as a distinctive trademark identifying, *inter alia*, sunglasses, (a) the public has come to recognize and identify sunglass products bearing any of the Oakley Marks as emanating from Oakley, (b) the public recognizes that sunglass products bearing any of the Oakley Marks constitute high quality products that conform to the specifications created by Oakley, and (c) the each of the Oakley Marks has established strong secondary meaning and extensive goodwill.

17. ESS is the exclusive owner, by assignment, of the ESS trademark ("ESS Mark"), which was registered on May 8, 2001, on the Principal Register of the U.S. PTO, bearing Registration No. 2,449,579. A true and correct copy of the certificate of registration of the ESS mark is attached hereto as Exhibit 5.

-3-

18.     The ESS Mark is associated with and used on the following goods: heavy-duty protective eyewear, namely goggles, and protective facemasks and helmets for industrial use.

19.     The ESS Mark has not been abandoned, canceled or revoked.

20.     The ESS Mark constitutes an enforceable trademark that uniquely identifies protective eyewear, facemasks and helmets as emanating from, sponsored by, and/or authorized by ESS.

21.     As a result of the widespread use and display of the ESS Mark as a distinctive trademark identifying eyewear, facemasks and helmets, (a) the public has come to recognize and identify eyewear, facemask and helmet products bearing the ESS Mark as emanating from ESS, (b) the public recognizes that eyewear, facemasks and helmets bearing the ESS mark constitute high quality products that conform to the specifications created by ESS, and (c) the ESS Mark has established strong secondary meaning and extensive goodwill.

**FIRST CLAIM FOR RELIEF**

(Patent Infringement of the '410 Patent)

(35 U.S.C. § 271)

22.     Plaintiffs repeat and re-allege the allegations of paragraphs 1-21 of this Complaint as if set forth fully herein.

23.     Defendant, through its agents, employees and servants, has, and continues to, knowingly, intentionally and willfully directly infringe, engage in acts of contributory infringement, and/or induce the infringement of the '410 patent by directly and/or indirectly making, using, selling, offering for sale and/or importing products which are covered by one or more claims of the '410 patent.

24.     Defendant's acts of infringement of the '410 patent were undertaken without permission or license from ESS or Oakley. Defendant had actual and/or constructive knowledge of the '410 patent, and its actions

-4-

1   constitute willful and intentional infringement of the '410 patent.

2        25.    Plaintiffs are informed and believe, and thereon allege, that

3   Defendant has derived and received, and will continue to derive and receive,

4   gains, profits and advantages from the aforesaid acts of infringement in an

5   amount that is not presently known to Plaintiffs.  By reason of the aforesaid

6   infringing acts, Plaintiffs have been damaged and are entitled to monetary relief

7   in an amount to be determined at trial.

8        26.    Due to the aforesaid infringing acts, Plaintiffs have suffered and

9   continue to suffer great and irreparable injury, for which Plaintiffs have no

10  adequate remedy at law.

11  **SECOND CLAIM FOR RELIEF**

12  (Patent Infringement of the D378 Patent)

13  (35 U.S.C. § 271)

14       27.    Plaintiffs repeat and re-allege the allegations of paragraphs 1-26 of

15  this Complaint as if set forth fully herein.

16       28.    Defendant, through its agents, employees and servants, has, and

17  continues to, knowingly, intentionally and willfully directly infringe, engage in

18  acts of contributory infringement, and/or induce the infringement of the D378

19  patent by directly and/or indirectly making, using, selling, offering for sale

20  and/or importing products that fall within the scope and claim contained in the

21  D378 patent.

22       29.    Defendant's acts of infringement of the D378 patent were

23  undertaken without permission or license from ESS or Oakley.  Defendant had

24  actual and/or constructive knowledge of the D378 patent, and its actions

25  constitute willful and intentional infringement of the D378 patent.

26       30.    Plaintiffs are informed and believe, and thereon allege, that

27  Defendant has derived and received, and will continue to derive and receive,

28  gains, profits and advantages from the aforesaid acts of infringement in an

1   amount that is not presently known to Plaintiffs.  By reason of the aforesaid
2   infringing acts, Plaintiffs have been damaged and are entitled to monetary relief
3   in an amount to be determined at trial.

4       31.    Due to the aforesaid infringing acts, Plaintiffs have suffered and
5   continue to suffer great and irreparable injury, for which Plaintiffs have no
6   adequate remedy at law.

7                          **THIRD CLAIM FOR RELIEF**
8   (Federal Trademark Infringement and Counterfeiting of the Oakley Marks)
9                              (15 U.S.C. § 1114(1))

10      32.    Plaintiffs repeat and re-allege the allegations of paragraphs 1-31 of
11  this Complaint as if set forth fully herein.

12      33.    Upon information and belief, Defendant KHM is involved in the
13  manufacture, sale, offer for sale, distribution, import and export of sunglasses
14  that bear one or more of the Oakley Marks without Oakley's consent ("Oakley
15  Counterfeit Products").

16      34.    Upon information and belief, long after Oakley's adoption and use
17  of each of the Oakley Marks, after the federal registration of each of the Oakley
18  Marks, and after each of the Oakley Marks had become famous, Defendant
19  KHM has affixed and used one or more of the Oakley Marks without Oakley's
20  consent in a manner that infringes upon Oakley's rights in the Oakley Marks.

21      35.    Without Oakley's consent, Defendant uses in commerce a
22  reproduction, counterfeit, copy, or colorable imitation of one or more of the
23  Oakley Marks in connection with the sale, offering for sale, distribution or
24  advertising of goods or services in a manner which is likely to cause confusion,
25  or to cause mistake, or to deceive.

26      36.    The unauthorized reproduction, counterfeiting, copying, imitation,
27  and use of the Oakley Marks is likely to cause confusion and mistake in the
28  minds of the purchasing public as to the source of the products and is, therefore,

a violation of 15 U.S.C. § 1114(1).

37.     KHM's activities constitute willful and intentional use of counterfeits and infringement of the Oakley Marks in total disregard of Oakley's proprietary rights, and were done despite Defendant's knowledge that the use of the Oakley Marks, or any reproduction, counterfeit, copy, or a colorable imitation thereof, was and is in direct contravention of Oakley's rights.

38.     Oakley is informed and believes, and thereon alleges, that Defendant has derived and received, and will continue to derive and receive, gains, profits and advantages from the reproduction, counterfeiting, copying, imitation, and use of the Oakley Marks in an amount that is not presently known to Oakley.   By reason of Defendant's actions, constituting unauthorized reproduction, counterfeiting, copying, imitation, and use of the Oakley Marks, Oakley has been damaged and is entitled to monetary relief in an amount to be determined at trial.

39.     Due    to    Defendant's    actions,    constituting    unauthorized reproduction, counterfeiting, copying, imitation, and use of the Oakley Marks, Oakley has suffered and continues to suffer great and irreparable injury, for which Oakley has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

(Federal Unfair Competition & False Designation of

Origin of the Oakley Marks)

(15 U.S.C. § 1125(a))

40.     Plaintiffs repeat and re-allege the allegations of paragraphs 1-39 of this Complaint as if set forth fully herein.

41.     Defendant's use of the Oakley Marks without Oakley's consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association

of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person in violation of 15 U.S.C. § 1125(a).

42.    Defendant's use of the Oakley Marks without Oakley's consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities in violation of 15 U.S.C. § 1125(a).

43.    Such conduct by Defendant is likely to confuse, mislead, and deceive Defendant's customers, purchasers, and members of the public as to the origin of the Oakley Marks or cause said persons to believe that Defendant and/or its products have been sponsored, approved, authorized, or licensed by Oakley or are in some way affiliated or connected with Oakley, all in violation of 15 U.S.C. § 1125(a).

44.    Upon information and belief, Defendant's actions were undertaken willfully with full knowledge of the falsity of such designation of origin and false descriptions or representations, and with the express intent to cause confusion, and to mislead and deceive the purchasing public.

45.    Oakley is informed and believes, and thereon alleges, that Defendant has derived and received, and will continue to derive and receive, gains, profits and advantages from Defendant's false designation of origin, false or misleading description of fact, or false or misleading representation of fact in an amount that is not presently known to Oakley.  By reason of Defendant's actions, constituting false designation of origin, false or misleading description of fact, or false or misleading representation of fact, Oakley has been damaged and is entitled to monetary relief in an amount to be determined at trial.

46.    Due to Defendant's actions, constituting false designation of origin,

false or misleading description of fact, or false or misleading representation of fact, Oakley has suffered and continues to suffer great and irreparable injury, for which Oakley has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

(Federal Trademark Dilution of the Oakley Marks)

(15 U.S.C. § 1125(c))

47.     Plaintiffs repeat and re-allege the allegations of paragraphs 1-46 of this Complaint as if set forth fully herein.

48.     The products sold by Oakley under the Oakley Marks have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.

49.     Products sold under the Oakley Marks, by reason of their style and design and quality of workmanship, have come to be known to the purchasing public throughout the United States as representing products of high quality, which are sold under good merchandising and customer service conditions.  As a result, the Oakley Marks, and the goodwill associated therewith, are of great value to Oakley.

50.     By virtue of the wide renown acquired by the Oakley Marks, coupled with the national and international distribution and extensive sale of various products distributed under this trademark, each of the Oakley Marks has become famous.

51.     Upon information and belief, Defendant's actions were done willfully with intent to exploit Oakley's reputation and dilute the Oakley Marks.

52.     By reason of the aforesaid acts constituting trademark dilution, Oakley has been damaged and is entitled to monetary relief in an amount to be determined at trial.

53.     Due to Defendant's actions, constituting trademark dilution, Oakley has suffered and continues to suffer great and irreparable injury, for

which Oakley has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

(Federal Trademark Infringement and Counterfeiting of the ESS Mark)

(15 U.S.C. § 1114(1))

54.    Plaintiffs repeat and re-allege the allegations of paragraphs 1-53 of this Complaint as if set forth fully herein.

55.    Upon information and belief, Defendant KHM is involved in the manufacture, sale, offer for sale, distribution, import and export of goggles that bear the ESS Mark without ESS or Oakley's consent ("ESS Counterfeit Products").

56.    Upon information and belief, long after ESS's adoption and use of the ESS Mark, after the federal registration of the ESS Mark, and after the ESS Mark had become famous, Defendant KHM has affixed and used the ESS Mark without ESS or Oakley's consent in a manner that infringes upon Plaintiffs' rights in the ESS Mark.

57.    Without ESS or Oakley's consent, Defendant uses in commerce a reproduction, counterfeit, copy, or colorable imitation of the ESS Mark in connection with the sale, offering for sale, distribution or advertising of goods or services in a manner which is likely to cause confusion, or to cause mistake, or to deceive.

58.    The unauthorized reproduction, counterfeiting, copying, imitation, and use of the ESS Mark is likely to cause confusion and mistake in the minds of the purchasing public as to the source of the products and is, therefore, a violation of 15 U.S.C. § 1114(1).

59.    KHM's activities constitute willful and intentional use of counterfeits and infringement of the ESS Mark in total disregard of Plaintiffs' proprietary rights, and were done despite Defendant's knowledge that the use of the ESS Mark, or any reproduction, counterfeit, copy, or a colorable imitation

thereof, was and is in direct contravention of Plaintiffs' rights.

60. Plaintiffs are informed and believe, and thereon allege, that Defendant has derived and received, and will continue to derive and receive, gains, profits and advantages from the reproduction, counterfeiting, copying, imitation, and use of the ESS Mark in an amount that is not presently known to Plaintiffs. By reason of Defendant's actions, constituting unauthorized reproduction, counterfeiting, copying, imitation, and use of the ESS Mark, Plaintiffs have been damaged and are entitled to monetary relief in an amount to be determined at trial.

61. Due to Defendant's actions, constituting unauthorized reproduction, counterfeiting, copying, imitation, and use of the ESS Mark, Plaintiffs have suffered and continue to suffer great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

(Federal Unfair Competition & False Designation of Origin of the ESS Mark)

(15 U.S.C. § 1125(a))

62. Plaintiffs repeat and re-allege the allegations of paragraphs 1-61 of this Complaint as if set forth fully herein.

63. Defendant's use of the ESS Mark without ESS or Oakley's consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person in violation of 15 U.S.C. § 1125(a).

64. Defendant's use of the ESS Mark without ESS or Oakley's consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or

-11-

promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities in violation of 15 U.S.C. § 1125(a).

65. Such conduct by Defendant is likely to confuse, mislead, and deceive Defendant's customers, purchasers, and members of the public as to the origin of the ESS Mark or cause said persons to believe that Defendant and/or its products have been sponsored, approved, authorized, or licensed by Plaintiffs or are in some way affiliated or connected with Plaintiffs, all in violation of 15 U.S.C. § 1125(a).

66. Upon information and belief, Defendant's actions were undertaken willfully with full knowledge of the falsity of such designation of origin and false descriptions or representations, and with the express intent to cause confusion, and to mislead and deceive the purchasing public.

67. Plaintiffs are informed and believe, and thereon allege, that Defendant has derived and received, and will continue to derive and receive, gains, profits and advantages from Defendant's false designation of origin, false or misleading description of fact, or false or misleading representation of fact in an amount that is not presently known to Plaintiffs. By reason of Defendant's actions, constituting false designation of origin, false or misleading description of fact, or false or misleading representation of fact, Plaintiffs have been damaged and are entitled to monetary relief in an amount to be determined at trial.

68. Due to Defendant's actions, constituting false designation of origin, false or misleading description of fact, or false or misleading representation of fact, Plaintiffs have suffered and continue to suffer great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

/ / /

/ / /

# EIGHTH CLAIM FOR RELIEF

## (Federal Trademark Dilution of the ESS Mark)

### (15 U.S.C. § 1125(c))

69.     Plaintiffs repeat and re-allege the allegations of paragraphs 1-68 of this Complaint as if set forth fully herein.

70.     The products sold by Plaintiffs under the ESS Mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.

71.     Products sold under the ESS Mark, by reason of their style and design and quality of workmanship, have come to be known to the purchasing public throughout the United States as representing products of high quality, which are sold under good merchandising and customer service conditions.  As a result, the ESS Mark, and the goodwill associated therewith, are of great value to Plaintiffs.

72.     By virtue of the wide renown acquired by the ESS Mark, coupled with the national and international distribution and extensive sale of various products distributed under this trademark, the ESS Mark has become famous.

73.     Upon information and belief, Defendant's actions were done willfully with intent to exploit Plaintiffs' reputation and dilute the ESS Mark.

74.     By reason of the aforesaid acts constituting trademark dilution, Plaintiffs have been damaged and are entitled to monetary relief in an amount to be determined at trial.

75.     Due to Defendant's actions, constituting trademark dilution, Plaintiffs have suffered and continue to suffer great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendant for the following relief:

/ / /

-13-

A.     An Order adjudging Defendant to have willfully infringed the '410 patent under 35 U.S.C. § 271;

B.     A preliminary and permanent injunction enjoining Defendant, its respective officers, directors, agents, servants, employees and attorneys, and those persons in active concert or participation with Defendant, from directly or indirectly infringing the '410 patent in violation of 35 U.S.C. § 271;

C.     That Defendant account for all gains, profits, and advantages derived by Defendant's infringement of the '410 patent in violation of 35 U.S.C. § 271, and that Defendant pay to Plaintiffs all damages suffered by Plaintiffs;

D.     An Order adjudging Defendant to have willfully infringed the D378 patent under 35 U.S.C. § 271;

E.     A preliminary and permanent injunction enjoining Defendant, its respective officers, directors, agents, servants, employees and attorneys, and those persons in active concert or participation with Defendant, from directly or indirectly infringing the D378 patent in violation of 35 U.S.C. § 271;

F.     That Defendant account for all gains, profits, and advantages derived by Defendant's infringement of the D378 patent in violation of 35 U.S.C. § 271, and that Defendant pay to Plaintiffs all damages suffered by Plaintiffs;

G.     A preliminary and permanent injunction against KHM, its agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participation with KHM, enjoining them from engaging in the following activities and from assisting or inducing, directly or indirectly, others to engage in the following activities:

1. Using any of the Oakley Marks or ESS Mark, or any other mark, symbol, or logo that is a reproduction, counterfeit, copy, or colorable imitation of or confusingly similar to any of the

-14-

Oakley Marks or ESS Mark on or in connection with any goods including, but not limited to sunglasses and goggles;

2. Manufacturing, importing, exporting, distributing, shipping, introducing into commerce, offering for sale; selling, returning, disposing of, packaging, re-packaging, marketing, advertising, or supplying any goods that bear, embody, display, or affix any of the Oakley Marks or ESS Mark;

3. Destroying, disposing of, altering, transporting, hiding, concealing, secreting, or otherwise making unavailable to the Court, to Plaintiffs, and to the United States Marshal or to any other law enforcement officer any of the following:

    a. Oakley Counterfeit Products, ESS Counterfeit Products and any other goods, merchandise or articles that falsely bear any of the Oakley Marks or ESS Mark;

    b. Any promotional and advertising materials, labels, packages, wrappers, containers, and any other unauthorized items which reproduce, copy, imitate, or bear any of the Oakley Marks or ESS Mark;

    c. Any documents or tangible things, electronic files, and business records that pertain to the manufacture, sale, offer for sale, distribution, advertising, and marketing of the Oakley Counterfeit Products or ESS Counterfeit Products including, but not limited to, correspondence, sales and supplier or customer journals, ledgers, invoices, purchase orders, inventory control documents, bank records, catalogs, recordings of any type whatsoever, and all other business records and documents;

/ / /

-15-

        4. Diluting and infringing any of the Oakley Marks or ESS Mark or Plaintiffs' other trademarks and damaging Plaintiffs' goodwill, reputation, and businesses;

H.     That Plaintiffs and/or their designees be authorized to seize the following items which are in Defendant's possession, custody, or control:

        1. All Counterfeit Oakley Products and all Counterfeit ESS Products including, but not limited to all merchandise, goods, or articles bearing any of the Oakley Marks or ESS Mark, including, but not limited to, sunglasses and goggles.

        2. All catalogs, brochures, leaflets, marketing materials or other tangible items that bear any of the Oakley Marks or ESS Mark or that contain depictions of merchandise, goods, or articles that bear any of the Oakley Marks or ESS Mark including, but not limited to, the Oakley Counterfeit Products or the ESS Counterfeit Products; and all records including, but not limited to, financial documents, computer printouts, electronic mail, computer disks, and electronic files whether or not located on hard drives and/or other storage devices documenting or reasonably appearing to document or relating to the manufacture, importation, exportation, purchase, sale, distribution, receipt, promotion or advertising of any merchandise, goods, or articles that bear or are intended to bear any of the Oakley Marks or ESS Mark including, but not limited to, the Counterfeit Oakley Products or the Counterfeit ESS Products.

I.     That the Court order that Defendant be required to supply Plaintiffs' counsel with a complete list of: (1) individuals and entities who manufactured the Oakley Counterfeit Products and/or the ESS Counterfeit

Products (along with the quantities of all such counterfeit merchandise); (2) individuals and entities from whom or which Defendant purchased the Oakley Counterfeit Products and/or the ESS Counterfeit Products (along with the quantities of all such counterfeit merchandise); and (3) individuals and entities to whom or which Defendant sold, offered for sale, distributed, advertised, promoted the Oakley Counterfeit Products and/or the ESS Counterfeit Products (along with the quantities of all such counterfeit merchandise);

J.   That Plaintiffs be awarded damages for Defendant's trademark infringement, counterfeiting, unfair competition, false designation of origin, and/or trademark dilution pursuant to 15 U.S.C. § 1117;

K.   That Defendant account for and pay over to Plaintiffs all damages sustained by Plaintiffs and profits realized by Defendant by reason of the Defendant's unlawful acts alleged herein and those damages be increased as provided by law;

L.   That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 117(a) and (b);

M.   That the Court award Plaintiffs their costs of suit incurred herein;

N.   An Order for a trebling of damages and/or exemplary damages because of Defendant's willful conduct pursuant to 35 U.S.C. § 284;

O.   An Order adjudging that this is an exceptional case;

P.   An award to Plaintiffs of the attorneys' fees and costs incurred by Plaintiffs in connection with this action pursuant to 35 U.S.C. § 285;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    Q.    An award of pre-judgment and post-judgment interest and costs of

2  this action against Defendant;

3    R.    Such other and further relief as this Court may deem just.

5                              Respectfully submitted,

6                              KNOBBE, MARTENS, OLSON & BEAR, LLP

8  Dated:  12/28/2010          By: _____

9                                   Michael K. Friedland
                                    Paul N. Conover
                                    Ali S. Razai
10                                  Attorneys for Plaintiffs Oakley, Inc. and Eye
                                    Safety Systems, Inc.

1

## DEMAND FOR JURY TRIAL

2
Plaintiff Oakley, Inc. hereby demands a trial by jury on all issues so triable.

3

4
KNOBBE, MARTENS, OLSON & BEAR, LLP

5

6
Dated: 12/28/10                By: _____

7
Michael K. Friedland
Paul N. Conover

8
Ali S. Razai
Attorneys for Plaintiffs Oakley, Inc. and Eye

9
Safety Systems, Inc.

10214462
10
122710

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

US006047410A

# United States Patent [19]

## Dondero

[11] **Patent Number:** **6,047,410**

[45] **Date of Patent:** **Apr. 11, 2000**

[54] **GOGGLE FRAME AND ATTACHMENT SYSTEM**

[75] Inventor: **John D. Dondero**, Ketchum, Id.

[73] Assignee: **Eye Safety Systems, Inc.**, Sun Valley, Id.

[21] Appl. No.: **09/128,048**

[22] Filed: **Aug. 3, 1998**

[51] Int. Cl.$^7$ .................................. **A61F 9/02; G02C 5/22**

[52] U.S. Cl. ...................... **2/426; 2/436; 2/449; 351/158**

[58] Field of Search .............................. 2/426, 427, 428, 2/436, 438, 440, 452, 431, 451, 441, 443, 449, 450; 351/44, 158

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,298,031 | 1/1967 | Morgan | 2/9 |
| 4,391,498 | 7/1983 | Rengstorff | 351/121 |
| 4,978,209 | 12/1990 | Ohba | 351/153 |
| 5,341,516 | 8/1994 | Keim | 2/452 |
| 5,410,763 | 5/1995 | Bolle | 2/436 |
| 5,495,623 | 3/1996 | Leonardi | 2/431 |
| 5,511,251 | 4/1996 | Brakas | 2/452 |
| 5,642,178 | 6/1997 | Leonardi et al. | 351/111 |

Primary Examiner—John J. Calvert
Assistant Examiner—Tejash D Patel
Attorney, Agent, or Firm—Curtis L. Harrington

[57] **ABSTRACT**

An improved goggle system includes a goggle housing surroundably supporting one or two lenses, and further includes a hinged strap attachment member which is pivotally engaged to the goggle housing forward of the rearward most extent of the side lens or lenses. The hinged strap attachment member has a small shield member disposed generally toward the axis of pivot to protect the space between the hinge and the goggle, and also to provide a smooth interfit with the goggle when the hinge is displaced back toward the head of the wearer, as when the goggle is used without a helmet or other structure which would tend to pull outwardly rather than back against the head of the user. The hinges have sufficient flexibility matched with respect to sufficient pin length to enable the hinges to be rapidly and easily removed from the goggle, so that the goggle could be removed from the helmet or other support system when the goggles are needed elsewhere. An integrated, angled strap support post is provided on and integral with the goggle housing, which would normally lie underneath the hinge when the hinge is in place, to enable the user to quickly insert another strap when needed.

**17 Claims, 3 Drawing Sheets**



-20-

EXHIBIT 1



FIG. 1

EXHIBIT 1

FIG. 2

EXHIBIT 1



FIG. 4

FIG. 6



FIG. 3

FIG. 5

EXHIBIT 1

6,047,410

1

## GOGGLE FRAME AND ATTACHMENT SYSTEM

### FIELD OF THE INVENTION

The present invention relates to an improved goggle frame and attachment system and particularly to a goggle frame and system which offers multiple attachment methods and an ability to fit with wider helmets.

### BACKGROUND OF THE INVENTION

The prior art describes many types and shapes of eye protection and goggles for a similarly wide variety of uses. In firefighting art, as well as other users of head wear, the eye wear protection may be supported by the head wear rather than the head directly. In the case of firefighting equipment, it is desired for the helmet to fit closely to the head to further isolate the wearer's head tissue from flames and hot gasses.

Goggles which fit over the helmet are needed not only because non-interference from goggle straps for fitting directly on the head are desired, but also to help keep up with the equipment as a unit and to make certain that the equipment operates as an integrated unit.

Goggles have advantages over face shields which make them more desirable for use in firefighting, including a smaller size less likely to be scratched, a fit closer to the face to either make a seal or to define a small space through which air flow can be controlled. Goggles also do a better job of sealing out debris and isolating the firefighter's eyes and facial tissues.

The use of goggles with head gear as an integrated unit is complicated by the size and shape of goggles. Good goggles have a sealing surface for close fit with the face. Strap support structures are typically located at the sides of the goggles and somewhat to the rear of the rearmost extent of the lenses. The location is usually rearward to promote stability with strapping worn on the head. However, the use of a goggle structure in conjunction with a helmet presents a length of strapping support which pulls less along the length of the wearer's head and more to the sides.

Forces which pull to the sides on goggles can destroy the usefulness of goggles which are meant to adhere closely to the face of the firefighter. Facial tissue can become exposed to the smoke and debris and can be dangerous. Danger can come both through harm to the firefighter, as well as through distraction from concentration of the emergency at hand.

What is therefore needed are goggles especially useful in hazardous or high stress situations, such as encountered in firefighting, and which can be supported by a firefighting helmet without being pulled outwardly from the face of the wearer. The operation of the needed goggle should not be dependent upon the size of the helmet, or the angle with which support from the helmet is derived. The needed goggle should be readily adjustable and readily useable without a helmet. Fittings which enable use with a helmet should be readily detachable.

### SUMMARY OF THE INVENTION

The improved goggle system of the present invention includes a goggle housing surrounding one or two lenses, and further includes a pivoting side attachment member which is pivotally engaged to the goggle housing forward of the rearward most extent of the side lens or lenses. The hinged strap support has a small shield member disposed generally toward the axis of pivot to protect the space between the side attachment member and the goggle, and

2

also to provide a smooth interfit with the goggle when the hinge is displaced back toward the head of the wearer, as when the goggle is used without a helmet or other structure which would tend to pull outwardly rather than back against the head of the user.

The hinges have sufficient flexibility matched with respect to sufficient pin length to enable the hinges to be rapidly and easily removed from the helmet or other support system when the goggles are needed elsewhere, yet always stay firmly attached when in use. An integrated, angled strap support post is provided on and integral with the goggle housing, which would normally lie underneath the hinge when the hinge is in place, to enable the user to quickly insert another strap when needed.

### BRIEF DESCRIPTION OF THE DRAWINGS

The invention, its configuration, construction, and operation will be best further described in the following detailed description, taken in conjunction with the accompanying drawings in which:

FIG. 1 is a front view of the goggle system of the invention, and illustrating prominently a pivoting side attachment member and shield extending toward the axis of pivot with one side attachment member folded back, and another folded forward in a position it would have if supported from a helmet (with a portion of a surface of the helmet shown in phantom);

FIG. 2 is a front perspective exploded view illustrating the pivoting side attachment member removed and showing the pivot pins which extend into the goggle housing, the goggle lens displaced forwardly of the goggle housing, and the strap attachment structures which are integral to the goggle housing, and the complementary depression of the main goggle housing which interfits with the shield of the pivoting side attachment member;

FIG. 3 is a downward view onto the top of the right side of the goggle housing and better illustrating the upper pivot aperture;

FIG. 4 is an upward view looking into the bottom of the goggle housing and better illustrating the lower pivot aperture;

FIG. 5 is a sectional view taken along line 5—5 of FIG. 2 and illustrating the strap retention members of the goggle housing; and

FIG. 6 is a sectional view taken along line 6—6 of FIG. 2 and illustrating a cross sectional view of the goggle strap supporting structures which are integral to the goggle housing.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

A description of the inventive marker of the present invention is shown in FIG. 1. A goggle system 21 is seen in plan view and including a transparent clear shield or lens 23 mounted within a front frame 25 of the goggle system 21. An upper connecting web 27 is partially shown as connecting the front frame 25 to a rear seal member 29.

A pair of pivoting side attachment members 31 connect the ends of a strap 33, which is only partially seen as it extends through part of the pivoting side attachment members 31, to the goggle system 21. In the view of FIG. 1, the pivoting side attachment member 31 on the right is in a rearwardly directed position as it would be if the strap 33 were engaging the head of the user. The pivoting side attachment member 31 on the right is in a position as would

# EXHIBIT 1

6,047,410

3

be achieved if the strap 33 were supported from an object which would be wider than the head of the wearer, such as for example a helmet or other head equipment about which the unseen connecting portions of the strap 33 extended. The pivoting side attachment members 31 each include an upper pivot arm 35 and a lower pivot arm 37, as well as a small shield member 39, which is somewhat of a rectangular projection, and projection somewhat toward the axis of pivot of the pivoting side attachment members 31. When the pivoting side attachment members 31 are in the wide position, as seen at the left of the drawing of FIG. 1, the small shield member 39 helps to guard against projections entering into what would otherwise be a wide opening between the pivoting side attachment member 31 and a side portion 41 of the goggle housing 43. Goggle housing 43 includes side portion 41, front frame 25, upper connecting web 27, and rear seal member 29. As can be seen in FIG. 1, the side portion 41 of the goggle housing is preferably designed to complementarily accommodate the pivoting side attachment members 31 in a close relationship to the side portions 41 of the goggle system when the strap 33 is worn on the head or when the strap 33 is supported rearwardly.

Other features seen in FIG. 1 include lower frame 45, lower connecting web 47 and lower sealing member 49. Side frame portion 51, side web and strap slot portion 53 and side sealing member 55 can also be partially seen.

The upper pivot arm 35 and lower pivot arm 37 are shown as terminated in with a slight bulge away from the goggle housing 43, and which as will be shown, includes a thickening of material to support pivot pins (not yet seen) which extend into the upper web 27 and lower web 47 portions of the system 21, respectively. Note that the upper pivot arm 35 and lower pivot arm 37 terminate and will pivot along an axis of pivot which is toward to the rearward most extent of the lens 23. This enables wide support to be utilized, as shown at the left side of FIG. 1, but without being applied from a point so far rearward of the goggle housing 43 that it would tend to bend the goggle system 21 away from the face of the wearer.

Referring to FIG. 2, a side view of the goggle system 21 is illustrated with the pivoting side attachment member 31 in the foreground removed to show its component parts. At the top of the goggle housing 43, in a rearward continuation of the front frame 25 and extending into the area normally occupied by the connecting web 27, an upper abbreviated length pivot bore 61 is seen. Pivot bore 61 is immediately surrounded with smooth material to facilitate long and uninterrupted smooth pivoting action. At the end of the upper pivot arm 35, a downwardly extending generally cylindrical pivot pin 63 is oriented to enter the upper pivot bore 61 when the pivoting side attachment member 31 is engaged with the goggle housing 43. Similarly, the lower pivot arm 37 has an upwardly directed generally cylindrical upper pivot pin 65 for engagement into a bottom structure of the goggle housing 43 which will be shown.

Side web and strap slot portion 53 are better seen as two structures having a sharply angled slot 67 for interfitting of another goggle strap, similar to strap 33. Slot 67 angles back more than 45° from an entry point normal to the surface of the goggle housing 43 into which the slot 67 enters. The structure of the sharply angled slot 67 also enables tension fixation in the same manner as engagement with strap 33 with respect to pivoting side attachment members 31. Although it is not necessarily recommended to use two straps simultaneously, the side web and strap slot portion 53 enables the goggle housing 43 to be released from the pivoting side attachment members 31, especially to leave

4

strap 33 connected to a helmet or the like, to then take the goggle housing 43 with lens 23 and thread a new strap through the side web and strap slot portion 53 for use directly on the head. Although only one pivoting strap connecting member 31 is prominently shown in FIG. 2, the other pivoting strap connecting member and other side of the goggle housing 43 is a mirror image and has the same structures.

Lens 23 is also shown as having a series of notches 69 which interfit with posts 71, two of which are seen as small cross members in a lens slot 73 which supports and interfits with the edge of the lens 23. Lens slot 73 exists in both the upper frame 25 and the lower frame 45. The posts 71 are used to better help the lens 23 to interlock into the upper and lower frames 25 and 45.

At the top connecting web 27 and lower connecting web 47 are seen a plurality of spaced apertures which are so numerous that they form a portion of the texture thereof. These apertures actually form a vertical air vent which promotes some movement of air flow in the goggle housing 43. It is an option to mount a fan motor in the top connecting web in order to help force air into the goggle housing 43 and behind the lens 23. This is an option not shown in FIG. 2, but the option is not impeded by the system 21 shown.

The strap 33 may have patches of one of hook and loop fastening members 75 for customized attachment to various points around the outside of a helmet. Attachment can be through snaps, grommets, gluing or even more permanent attachment. It is especially due to the most permanent attachment structures that the side web and strap slot portion 53 becomes more advantageous as the goggle housing 43 is detached from the pivoting side attachment members 31.

Also seen in FIG. 2 is a center post 77 which divides a strap opening into a pair of strap accommodation spaces 79. The center post comes out slightly above the surface of the pivoting side attachment members 31 in order to help the strap to stay positioned. When used with a strap, the center post 77 and strap accommodation spaces 79 enable a user to pull the loose end of strap 33 rearward to tighten and tension fix the portion of the strap depending from a helmet or head or other support structure, which tension stays fixed even if the loose end of the strap is released. This action can be accomplished if the structure to which the strap 33 engages is configured to work with strapping so that pulling the strapping through the structure is had from one side, while the other side is "tension fixed" and retains the tension against which it was pulled through the structure. This structure on the pivoting side attachement members 31 include center post 77 which has surfaces that extend beyond the surface of the pivoting side attachement members 31.

Note that the side frame portion 51, along with an upper extended length 81 of the upper frame 25, and a lower extended length 83 of the lower frame 45, defines a rectangular slot 85 into which the small shield member 39 interfits when the pivoting side attachment member 31 is folded back it its rearward most position. Since the small shield member 39 points generally in the direction of the axis of pivot, the pivoting of the pivoting side attachment members 31 keeps a leading edge 89 of the small shield member 39 near the goggle housing 43 to avoid opening up a space between the pivoting side attachment members 31 and the goggle housing 43.

Referring to FIG. 3, a downward view onto the top of the right side of the goggle housing 43 better illustrates the upper pivot aperture 61 and surrounding structures. Refer-

-25-

EXHIBIT 1

6,047,410

**5**

ring to FIG. 4, an upward view looking into the bottom of the goggle housing 43 and better illustrating a shallow lower pivot bore 91 which is in alignment with the upper pivot aperture 61.

FIG. 5 is a sectional view taken along line 5—5 of FIG. 2 and illustrates the strap retention members of the goggle housing 43, including side web and strap slot portion 53 and sharply angled slot 67.

Referring to FIG. 6, a sectional view taken along line 6—6 of FIG. 2 illustrates a cross sectional view of the goggle strap supporting structures, including center post 77 which extends slightly above the surface of the pivoting side attachment member 31 to better grasp the strap 33.

While the present invention has been described in terms of a set of goggles, goggle housing and support system to facilitate use of eye protection head wear with or without a helmet, one skilled in the art will realize that the structure and techniques of the present invention can be applied to many similar structures. The present invention may be applied in any situation where the lateral extent of a securing force may vary from application to application, but where an object is to be secured without significantly breaking contact due to a lateral component of the support force. The invention is especially useful where a removable holding structure facilitates use with a wider based securing system and where removal and reinstallation installation with respect to the securing system frees the supported structure to garner other support through additional structures located on the supported structure.

Although the invention has been derived with reference to particular illustrative embodiments thereof, many changes and modifications of the invention may become apparent to those skilled in the art without departing from the spirit and scope of the invention. Therefore, included within the patent warranted hereon are all such changes and modifications as may reasonably and properly be included within the scope of this contribution to the art.

What is claimed:

1. A goggle support comprising:
a goggle housing having at least one central opening for accepting at least one of a lens and shield, and including a first end and a second end;
a first attachment member having a pair of spaced apart collinear pivoting engagement structures for engaging said goggle housing nearer said first end of said goggle housing than said second end of said goggle housing, for supporting said goggle housing and including a first strap engagement structure to facilitate tension fixed engagement of said first strap engagement structure with a single length of a first strap portion threaded through said first strap engagement portion when said first strap engagement structure is in a rearward position and to facilitate release of said single length of said first strap portion when said first strap engagement structure is pivoted to a forward position; and
a second attachment member having a pair of spaced apart collinear pivoting engagement structures for engaging said goggle housing nearer said second end of said goggle housing than said first of said goggle housing, for supporting said goggle housing and including a second strap engagement structure to facilitate tension fixed support engagement of said second strap engagement structure with a single length of a second strap portion threaded through said second strap engagement portion when said second strap engagement structure is in a rearward position and to facilitate

**6**

release of said single length of said second strap portion when said second strap engagement structure is pivoted to a forward position.

2. The goggle support recited in claim 1 and wherein both said first and said second attachment members contain a small shield member extending toward an axis of pivot of said of collinear pivoting engagement structures.

3. The goggle support recited in claim 2 wherein said goggle housing has a first space nearer said first end of said goggle housing than said second end and complementary to said small shield member of said first attachment member, and a second space nearer said second end of said goggle housing that said first end and complementary to said small shield member of said second attachment member.

4. The goggle support recited in claim 3 wherein said goggle housing includes a goggle strap opening adjacent each of said first and said second spaces.

5. The goggle support recited in claim 1 wherein said pair of collinear pivoting engagement structures of each attachment member further comprise a pair of spaced apart pivot arms each having oppositely disposed pivot pins directed toward each other, and wherein said goggle housing includes a pair of aligned pivot bores each engaged with a respective one of said pivot pins to enable said attachment members to pivot with respect to said goggle housing.

6. The goggle support recited in claim 1 wherein said goggle housing includes an upper and lower frame for engaging said lens, an upper connecting web connected to said upper frame and a lower connecting web connecting to said lower frame, and an upper rear seal member attached to said upper connecting web and a lower rear sealing member attached to said lower connecting web.

7. The goggle support recited in claim 6 and further comprising a lens supported by said upper and lower frames.

8. The goggle support recited in claim 7 and wherein said upper and lower frames include a lens slot, and wherein said lens is supported in said lens slot.

9. The goggle support recited in claim 1 and further comprising a lens supported by goggle frame.

10. The goggle support recited in claim 1 and wherein said goggle housing includes an upper and lower frame, each having a lens slot for engaging said lens, each of said lens slots having a plurality of posts within the slot and extending across the slot, and wherein said lens has a corresponding plurality of notches engaging said posts to better secure said lens with respect to said goggle housing.

11. The goggle support recited in claim 1 wherein said goggle housing includes a first goggle strap opening adjacent said first attachment member and a second goggle strap opening adjacent said second attachment member.

12. The goggle support recited in claim 11 wherein said first and said second goggle strap openings angle sharply into said goggle support for facilitating tension fixation of a strap with respect to said goggle support.

13. A goggle support comprising:
a goggle housing having at least one central opening for accepting at least one of a lens and shield, and including a first end and a second end;
a first attachment member having a pair of spaced apart collinear pivoting engagement structures for engaging said goggle housing nearer said first end of said goggle housing than said second end of said goggle housing, for supporting said goggle housing and including a first strap engagement structure to facilitate tension fixed engagement of said first strap engagement structure with a first strap portion; and
a second attachment member having a pair of spaced apart collinear pivoting engagement structures for engaging

-26-

**EXHIBIT 1**

6,047,410

7

said goggle housing nearer said second end of said goggle housing than said first end of said goggle housing, for supporting said goggle housing and including a second strap engagement structure to facilitate tension fixed support engagement of said second strap engagement structure with a second strap portion and wherein said first and second attachment member engage said goggle housing forward of said at least one central opening for accepting at least one of a lens and shield.

14. A goggle support comprising:

a goggle housing having at least one central opening for accepting at least one of a lens and shield, and including a top frame portion and a bottom frame portion a first side frame portion and a second side frame portion, spaced apart from said first side frame portion, said first and second side frame portions extending between said top frame portion and said bottom frame portion;

a first pivoting side attachment member pivotally attached to said goggle housing for pivotally engaging said goggle housing forward of said first side frame portion; and

a second pivoting side attachment member pivotally attached to said goggle housing for pivotally engaging said goggle housing forward of said second side frame portion; said first and said second pivoting side attachment members for enabling said goggle housing to be supported from structures adjacent said goggle housing.

15. The goggle support recited in claim 14 wherein each of said first and second pivoting side attachment members include a strap engagement structure to facilitate enable support engagement of said strap engagement structure with a strap.

8

16. The goggle support recited in claim 14 wherein said goggle housing includes a first goggle strap opening adjacent said first side frame portion and a second goggle strap opening adjacent said second side frame portion.

17. A goggle support comprising:

a goggle housing having at least one central opening for accepting at least one of a lens and shield, and including a first end and a second end;

a first attachment member having a pair of spaced apart collinear pivoting engagement structures for engaging said goggle housing nearer said first end of said goggle housing than said second end of said goggle housing, for supporting said goggle housing and including a first strap tension fixation means for enabling a first strap engaged therewith to be tension adjusted by pulling on a free end of said first strap and to be freed from tension fixation by pivoting said first attachment member outward away from said goggle housing; and

a second attachment member having a pair of spaced apart collinear pivoting engagement structures for engaging said goggle housing nearer said second end of said goggle housing than said first end of said goggle housing, for supporting said goggle housing and including a second strap tension fixation means for enabling a second strap engaged therewith to be tension adjusted by pulling on a free end of said second strap and to be freed from tension fixation by pivoting said second attachment member outward away from said goggle housing.

*   *   *   *   *

-27-

EXHIBIT 1

# EXHIBIT 2

US00D510378S

(12) **United States Design Patent**       (10) Patent No.:       **US D510,378 S**
Dondero et al.                             (45) Date of Patent:   **       Oct. 4, 2005

(54) **GOGGLES**

(75) Inventors: **John Dondero**, Ketchum, ID (US); **David Muskovitz**, Park City, UT (US)

(73) Assignee: **Eye Safety Systems, Inc.**, Sun Valley, ID (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/180,534**

(22) Filed: **Apr. 24, 2003**

(51) **LOC (8) Cl.** ..................................................... **16-16**
(52) **U.S. Cl.** ..................................................... **D16/312**
(58) **Field of Search** ....................... D16/101, 300–330;
D29/109–110; D24/110.2; 351/41, 44, 51,
52, 158; 2/424, 426, 430, 436, 437, 447

(56)                    **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | | |
|---|---|---|---|---|
| D407,735 S | * | 4/1999 | Arnette | D16/312 |
| D408,431 S | * | 4/1999 | Simioni | D16/312 |
| 5,915,541 A | * | 6/1999 | Beltrani | 2/430 |
| 6,009,564 A | * | 1/2000 | Tackles et al. | 2/436 |
| D439,596 S | * | 3/2001 | Bolle | D16/312 |
| D478,926 S | * | 8/2003 | Moritz et al. | D16/312 |

OTHER PUBLICATIONS

Skiing , p. 158, Sep. 1986.*
Sales brochure, Gentex Corporation, Gentex EPS–21, prior to Apr. 24, 2003.
Sales brochure, Bollé, Inc., Practical Eyewear, Prior to Apr. 24, 2003.

* cited by examiner

*Primary Examiner*—Raphael Barkai
(74) *Attorney, Agent, or Firm*—Graybeal Jackson Haley LLP

(57)                    **CLAIM**

The ornamental design for goggles, as shown and described.

**DESCRIPTION**

FIG. 1 is an isometric view of the goggles; the strap illustrated in broken line is for illustrative purposes only and forms no part of the claimed design;
FIG. 2 is a front elevational view thereof;
FIG. 3 is a rear elevational view thereof, the opposite side being symmetrical;
FIG. 4 is a first side elevational view thereof;
FIG. 5 is a second side elevational view thereof;
FIG. 6 is a bottom plan view thereof; and,
FIG. 7 is a top plan view thereof.

**1 Claim, 2 Drawing Sheets**



EXHIBIT 2

**U.S. Patent**        Oct. 4, 2005        Sheet 1 of 2        US D510,378 S



Fig. 1

Fig. 2

Fig. 3

EXHIBIT 2



*Fig. 4*



*Fig. 5*



*Fig. 6*



*Fig. 7*

EXHIBIT 2

# EXHIBIT 3

Int. Cl.: 9

Prior U.S. Cl.: 26

## United States Patent and Trademark Office

Reg. No. 1,521,599
Registered Jan. 24, 1989

### TRADEMARK
### PRINCIPAL REGISTER

## OAKLEY

OAKLEY, INC. (CALIFORNIA CORPORATION)
11 MARCONI
IRVINE, CA 92718

    FOR: SUNGLASSES AND ACCESSORIES FOR SUNGLASSES, NAMELY, REPLACEMENT LENSES, EAR STEMS AND NOSE PIECES, IN CLASS 9 (U.S. CL. 26).

    FIRST USE 3–0–1984; IN COMMERCE 3–0–1984.
    OWNER OF U.S. REG. NOS. 1,169,945 AND 1,356,297.

    SER. NO. 685,035, FILED 9–18–1987.

MARIA SOLOMON, EXAMINING ATTORNEY

EXHIBIT 3

# EXHIBIT 4

Int. Cls.: 9, 12 and 25

Prior U.S. Cls.: 19, 26 and 39

**United States Patent and Trademark Office**

Reg. No. 1,356,297
Registered Aug. 27, 1985

## TRADEMARK
### PRINCIPAL REGISTER



OAKLEY, INC. (CALIFORNIA CORPORATION)
#3 WRIGLEY DRIVE
IRVINE, CA 92714

FOR: GOGGLES, SUNGLASSES AND PRO-
TECTIVE PADS FOR ELBOWS, FEET AND
KNEES, IN CLASS 9 (U.S. CLS. 26 AND 39).
FIRST USE 6-0-1978; IN COMMERCE
6-0-1978.

FOR: VEHICLE PARTS, NAMELY BICYCLE
AND MOTORCYCLE HAND GRIPS , IN CLASS
12 (U.S. CL. 19).
FIRST USE 6-0-1977; IN COMMERCE
6-0-1977.

FOR: CLOTHING - NAMELY T-SHIRTS;
GLOVES; RACING PANTS; HATS; SWEAT-
SHIRTS; SPORT SHIRTS, JACKETS, JEANS,
JERSEYS AND SKI PANTS, JACKETS, HATS,
GLOVES AND SOCKS, IN CLASS 25 (U.S. CL.
39).
FIRST USE 6-0-1977; IN COMMERCE
6-0-1977.

THE MARK CONSISTS OF A FANCIFUL
REPRESENTATION OF THE WORD
"OAKLEY".

SEC. 2(F).

SER. NO. 454,303, FILED 11-25-1983.

JODY HALLER DRAKE, EXAMINING ATTOR-
NEY

EXHIBIT 4

# EXHIBIT 5

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36, and 38

## United States Patent and Trademark Office

Reg. No. 2,449,579
Registered May 8, 2001

## TRADEMARK
### PRINCIPAL REGISTER

# ESS

EYE SAFETY SYSTEMS INC. (DELAWARE COR-
   PORATION)
P.O. BOX 1017
SUN VALLEY, ID 83353

   FOR: HEAVY-DUTY PROTECTIVE EYEWEAR,
NAMELY, GOGGLES, PROTECTIVE FACEMASKS
AND HELMETS ALL FOR INDUSTRIAL USE, IN
CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 8-31-1998; IN COMMERCE 8-31-1998.

SN 75-493,190, FILED 5-29-1998.

SCOTT BALDWIN, EXAMINING ATTORNEY

EXHIBIT 5

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney  and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

## SACV10- 1978 CJC (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================================

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [_] **Western Division** | [X] **Southern Division** | [_] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Michael K. Friedland (SBN 157,217)
Paul Conover (SBN 192,358)
Ali Razai (SBN 246, 922)
Knobbe, Martens, Olson & Bear, LLP
2040 Main St. Suite 1400; Irvine CA, 92614
Tel: (949) 760-0404

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKLEY INC., a Washington Corporation, EYE SAFETY SYSTEMS, INC., a Delaware Corporation <br><br> PLAINTIFF(S) <br><br> v. <br><br> KH MOUNTAIN, a Hong Kong Company <br><br><br> DEFENDANT(S). | CASE NUMBER <br><br> **SACV10-01978 CJC (PLAx)** <br><br><br><br> **SUMMONS** |

TO:   DEFENDANT(S): <u>KH MOUNTAIN, a Hong Kong Company</u>

A lawsuit has been filed against you.

Within <u> 21 </u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>Ali Razai</u> _____, whose address is <u>2040 Main Street, 14th Floor, Irvine CA 92614</u> . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

ROLLS ROYCE PASCHAL

Dated: <u>December 28, 2010</u>                By: _____

Deputy Clerk

*(Seal of the Court)*

1144

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

Michael K. Friedland (SBN 157,217)
Paul Conover (SBN 192,358)
Ali Razai (SBN 246, 922)
Knobbe, Martens, Olson & Bear, LLP
2040 Main St. Suite 1400; Irvine CA, 92614
Tel: (949) 760-0404

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKLEY INC., a Washington Corporation, EYE SAFETY SYSTEMS, INC., a Delaware Corporation<br><br>PLAINTIFF(S)<br><br>v.<br><br>KH MOUNTAIN, a Hong Kong Company<br><br><br><br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV10-01978 CJC (PLAx)**<br><br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): <u>KH MOUNTAIN, a Hong Kong Company</u>

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>Ali Razai</u>, whose address is <u>2040 Main Street, 14th Floor, Irvine CA 92614</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

ROLLS ROYCE-PANCHAL

Dated: <u>December 28, 2010</u>      By: _____
                                              Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                              SUMMONS

COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) | **DEFENDANTS** |
|---|---|
| OAKLEY INC., a Washington Corporation, <br> EYE SAFETY SYSTEMS, INC. a Delaware Corporation | KH MOUNTAIN, a Hong Kong Company |

| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Michael K. Friedland, Paul Conover, Ali Razai <br> Knobbe, Martens, Olson & Bear, LLP <br> 2040 Main St. Suite 1400; Irvine CA, 92614 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ To Be Determined

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
35 U.S.C Sec 271 Patent Infringement

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☑ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

## SACV10-01978 CJC (PLAx)

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County, California<br>Delaware | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Hong Kong, China |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County, California | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  12/28/2010

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |